IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACKQUELYN SIMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-4651 |
| | § | |
| FIRST TRANSIT, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Jackquelyn Sims alleges that she was sexually harassed by one of her supervisors while she was a trainee driver at First Transit, Inc., a provider of transportation services. She alleges that the individual responsible for training her for a commercial driver's license, Christopher Smith, repeatedly touched her inappropriately and asked her for nude photos. Sims alleges that she and her romantic partner, who also worked for First Transit, were removed from First Transit's schedule and subsequently fired in retaliation for her complaints about Smith's harassment. She asserts claims against First Transit for a hostile work environment and for retaliation under Title VII of the Civil Rights Act of 1964.

First Transit moved for summary judgment on Sims's claims. (Docket Entry No. 19). Sims failed to respond to the motion. Based on the pleadings, the motion, the record, and the applicable law, the court grants First Transit's motion for summary judgment. The reasons are set out below.

**I.   Background**

First Transit provides transportation services. (Docket Entry No. 19 at 7). First Transit's roles require a Class B Commercial Driver's License. (*Id*.). First Transit offers its employees 90

hours of paid training programs to help them prepare for and obtain their Commercial Driver's Licenses. (*See* Ex. A ¶ ¶ 4-5). First Transit hired Sims as a trainee on October 27, 2021. (Ex. B at 93:7-10; Ex. C at 93). First Transit informed Sims that her offer of employment was contingent on her obtaining a Commercial Driver's License. (*See* Ex. C at 4; Ex. D). Sims attended orientation sessions, where she received First Transit's employee handbook, which she signed to acknowledge her receipt. (Ex. B at 94:8-96:5, Ex. E; Ex. F). She also confirmed receipt of First Transit's employee policies on equal employment opportunities and harassment. (Ex. B at 105:14-106:6; Ex. E; Ex. G; Ex H).

On October 28, 2021, Sims began the Commercial Driver's License Bus Driver trainee program. (Ex. C at 4). First Transit's safety manager, Christopher Smith, gave his cell phone number to all trainees. (*Id.*). During her training, Smith asked Sims to send him photos and videos of herself; in response, Sims sent Smith a photo of herself in a sheer shirt and the bottom half of a bathing suit. (Docket Entry No. 19 at 8; Ex. B at 143:21-144:12; Ex. C at 7). Sims completed the required 90 hours of Commercial Driver's License training but asked to take the training course a second time. (Ex. A, ¶ 10). First Transit allowed Sims to retake the course and continued to pay her for that time. (*Id.*).

Sims alleges that on November 23, 2021, she and four other trainees were with Smith in the waiting room of the Department of Public Safety when Smith "put his hand between her legs and grabbed her bottom." (Docket Entry No. 19 at 9; Ex. K). She did not report this incident at the time it occurred.

On December 6, 2021, Sims asked to take the Commercial Driver's License training class for a third time, even though she had already spent 158 hours in training. (Ex. I; Ex. I-1 at 1.). First Transit informed her that she could not take the training class for a third time and that she

2

had to promptly schedule her Commercial Driver's License test. (*Id.*). The next day, December 7, Iyobosa Omoruyi, Sims's romantic partner, reported concerns about Smith and Sims to the operations manager, Yolanda Verden. (Ex. A, ¶ 12; Ex. I.). In response, First Transit separated Smith and Sims by placing Sims in a group with a different safety trainer, Latricia Greenwood. (Docket Entry No. 19 at 9; Ex. A, ¶ 12; Ex. I; Ex. J).

On December 8, 2021, Sims's manager, Julia Saldana, returned to work. (Ex. A, ¶¶ 12-13; Ex. I.). Verden, the operations manager, told Saldana about Omoruyi's complaints concerning Sims and Smith. (*Id.*). Saldana promptly began investigating, and took the following steps: (1) she asked to speak with Sims; (2) she identified witnesses who may have been present during the November 23, 2021 incident; (3) she directed Smith to stay away from Sims; and (4) she changed Smith's schedule to separate him from Sims. (*Id.*).

On December 9, 2021, Sims spoke with Saldana. (Ex. A, ¶ 14; Ex. I.). The next day, December 10, at Saldana's request, Sims sent an email detailing the incidents with Smith. (Ex. A, ¶ 19; Ex. I.). After Saldana received this email statement, Saldana emailed Sims informing her that First Transit was investigating her complaint and that Greenwood, the other safety trainer, would complete Sims's instruction. (Ex. A, ¶ 20; Ex. K.).

None of the eyewitnesses that Saldana had identified reported seeing any inappropriate actions by Smith towards Sims. (Ex. I; Ex. I-3; Ex. I-4; Ex. I6; Ex. I-11; Ex. A, ¶ 20). On December 21, 2021, Saldana informed Sims that the investigation was complete, and that First Transit had been unable to substantiate Sims's allegations. (Ex. A, ¶ 21; Ex. L).

On December 13, 2021, Sims completed the training program and self-scheduled her Commercial Driver's License test for December 29, 2021. (Ex. A, ¶ 22; Ex. M). On December 20, 2021, Sims told Saldana that her hours had been cut. (Ex. A, ¶ 23; Ex. M). Saldana explained that

Sims's hours had not been cut, but that Sims had completed her training hours and that she could not move to a full-time bus driver position until she took and passed her Commercial Driver's License test. (*Id*.). Sims had self-scheduled her test for December 29, 2021, even though there were open testing days before then. (*Id*.). Saldana also explained that Sims would have to reschedule her test because Sims's safety trainer, Greenwood, was only available until December 28, 2021. (Ex. A, ¶ 23; Ex. M; Ex. N.).

Sims failed to reschedule her test to an earlier date. (Ex. A, ¶ 24; Ex. M). Instead, Sims rescheduled her test date to December 31, 2021. (Ex. A, ¶ 26; Ex. N). Because First Transit was closed for New Year's Eve, Sims could not take the test on that date. (*Id.*). Sims scheduled her new test date to January 7, 2022. (Ex. A, ¶ 27.). Sims alleges that she was not able to find any earlier testing dates; Saldana states that there were multiple earlier dates. (*Id.*).

On January 4, 2022, Saldana sent Sims a letter informing her that her employment was terminated effective immediately due to her failure to obtain her Commercial Driver's License. (Ex. A, ¶ 28; Ex. O). First Transit's drivers' training program is designed to take 14 days. (Exhibit O). When Sims was fired, she had been in training for 44 days. (*Id*.). Saldana told Sims that she was welcome to reapply for employment after she obtained her Commercial Driver's License. (*Id.*). Sims filed this suit, alleging sexual harassment and retaliation.

## II.   The Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San*

*Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

**III.    Analysis**

    **A. The Sexual Harassment Claim**

"Title VII … forbids sexual harassment in the workplace as a form of sex discrimination." *Newbury v. City of Windcrest*, 991 F.3d 672, 676 (5th Cir. 2021). "There are two types of sexual harassment under Title VII: *quid-pro-quo* and hostile-environment harassment." *Id.* Sims's claim is for a hostile work environment. Under Title VII, a plaintiff making a hostile work environment claim must present proof that: (1) she is a member of a protected class; (2) she was subjected to unwanted or unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to act promptly to address it. *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1004 (5th Cir. 2024).

Sims has failed to present or point to evidence that could prove the fifth element by showing that First Transit failed to act promptly to address Smith's harassment. Instead, the record shows that First Transit acted quickly. After Sims's partner made First Transit aware that Smith was behaving inappropriately towards Sims, First Transit promptly reassigned Sims to a group with another safety trainer. And even before Sims spoke with Saldana and made a formal complaint

about Smith, Saldana had begun investigating the reported harassment. While the investigation proceeded, Saldana took steps to ensure that Smith and Simms were not on overlapping schedules. Because the record evidence shows that First Transit did promptly act in response to a report that Smith was behaving inappropriately towards Sims, summary judgment dismissing the hostile work environment claim is appropriate.

### B.  The Retaliation Claim

Under Fifth Circuit precedent, Sims's claim for retaliation must be analyzed under the *McDonnell Douglas* burden-shifting framework. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) "At the last step of that analysis, the burden is on [the plaintiff] to show that the non-retaliatory, non-discriminatory justifications for her termination provided by [her employer] were pretextual." *Cerda*, 95 F.4th at 1003. "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (citation omitted).

First Transit has presented evidence that it terminated Sims because she failed to timely obtain her Commercial Driver's License, despite having ample paid training time and several opportunities to take the test.  Sims had to have a Commercial Driver's License to move into a full-time role.  Sims knew this at the beginning of her employment with First Transit.  Sims has failed to point to or present any evidence to rebut First Transit's legitimate, nondiscriminatory reason for firing her.  Sims's retaliation claim cannot survive summary judgment.

## IV. Conclusion

The motion for summary judgment, (Docket Entry No. 19), is granted. Sims's claims for hostile work environment and retaliation under Title VII are dismissed, with prejudice. Final judgment is separately entered.

SIGNED on June 13, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge